AMERICAN BUILDING & LOAN ASS'N v. CARTER et ux.

(Circuit Court of Appeals, Fifth Circuit. January 9, 1900.)

No. 766.

MORTGAGES—COLLUSIVE SALE UNDER MORTGAGE AFTER PAYMENT OF DEBT.
 Evidence considered, and *held* to establish that the taking up of a note by the maker was a payment, and not a purchase on behalf of his mother, whose check was used in making the final payment, and that a subsequent sale of property under a trust deed securing such note was fraudulent and

voidable as against a subsequent mortgagee which took its mortgage under an agreement that the lien of the note should be extinguished out of the proceeds of its mortgage.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

U. F. Short, for appellant.

Alexander, Clark & Hall, for appellee.

Before PARDEE and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. The transactions out of which the suit arose were as follows: On the 22d day of June, 1889, James B. Simpson made a conveyance of the property involved in this litigation, and located in Dallas, Tex., to J. J. Carter, in consideration of the sum of $3,000,—one-half cash, and a note for $1,500, payable 12 months after date, with interest at the rate of 10 per cent. per annum, a lien being retained in the deed of conveyance to secure the payment of this note. A deed of trust was also executed at the time to secure the payment of this note, but this deed of trust was not recorded until January 6, 1892. The American Building & Loan Association, on the 2d day of October, 1889, made a loan of $5,000 to J. J. Carter and wife, Josephine M. Carter, for which they executed their bond in writing and a deed of trust to secure the payment of the same upon the property so purchased by the said J. J. Carter from James B. Simpson. At the time of this transaction the loan association had no actual notice of the existence of the deed of trust executed by J. J. Carter to secure the payment of the $1,500, and it was expressly understood between J. J. Carter and Josephine M. Carter and the association that the $1,500 vendor's lien note should be paid off and canceled out of the proceeds of said $5,000 loan. The by-laws of the company and the laws of the state of Minnesota forbade its lending money except upon first liens and mortgages. On December 9, 1891, default having been made in the payment of the bond, the American Building & Loan Association instituted a suit in equity (No. 200, equity docket of the circuit court) to foreclose its deed of trust upon the property, and made J. W. Young a party defendant to the bill, it being supposed that James B. Simpson had transferred the note for $1,500 executed by J. J. Carter to the said J. W. Young, and that the latter then held the same. At the time of the institution of this suit the complainant therein did not know that Mrs. N. J. Carter had any interest in said $1,500 note. It appears that, after the maturity of the $1,500 lien note, J. W. Young, at the instance of J. J. Carter, bought from James B. Simpson, the then holder, the said note, and the same was indorsed "Without recourse" by said James B. Simpson. J. W. Young acquired the note in apparent good faith, and held the same until the 5th of November, 1891. During the time Young held the note, various payments were made thereon by J. J. Carter and his agents, and to such an extent that on the 5th of November, 1891, the amount due thereon had been reduced to the sum of $900. J. J. Carter testifies that these several payments made upon the note were with moneys furnished by his mother, Mrs. Nancy J. Carter, but, taking

his evidence in this regard, in connection with his whole evidence and conduct in the case, we are not inclined to the opinion that Carter's evidence, although uncontradicted by any other witness, imports absolute verity. On the 5th of November, the note was taken up by J. J. Carter, who paid the balance thereon—$900—in a check drawn by his mother on the National Exchange Bank of Dallas, Tex., where the mother had opened an account on the 19th of October, 1891. The following indorsement appears upon the note (there is no evidence showing or tending to show when it was made), to wit: "Pay to order of Mrs. N. J. Carter. J. W. Young. Mrs. J. W. Young, per J. P. A. Heintz."

It further appears from the evidence that on the 6th day of January—long prior to filing the answer of J. J. Carter and Josephine M. Carter in the original suit—the trustee in the deed given by J. J. Carter to secure the $1,500 lien note, which deed was not recorded until January 6, 1892, sold, after notice and advertisement, the property in controversy to Mrs. Nancy J. Carter for the apparent consideration of $1,000. The deed executed in pursuance of this sale was not filed for record until May 3, 1893. The evidence further shows that prior to the 6th of January, 1892, and thereafter until her death, in 1894, the said Mrs. Nancy J. Carter resided with her son, J. J. Carter, and that thereafter until the present time all the rents and revenues collected on the said property have been received by Mrs. Nancy J. Carter and her devisee, Mrs. Josephine M. Carter, the wife of J. J. Carter. It appears also from the record, on the 28th day of February, 1885, Mrs. Nancy J. Carter made a last will, devising all her property among her two sons, two daughters, and a granddaughter, share and share alike, with the exception of a special legacy in favor of his granddaughter; that on the 22d day of June, 1892,—very shortly after J. J. Carter and his wife, Josephine M. Carter, filed their answer in the original suit of foreclosure,—Mrs. Nancy J. Carter added a codicil to her will, giving and specially devising to Mrs. Josephine M. Carter, the wife of her son, J. J. Carter, the premises apparently acquired by her under trustee's deed aforesaid. The defendants J. J. Carter and Josephine M. Carter filed an answer to said bill on June 9, 1892, and on the same day J. W. Young filed his disclaimer of all interest in or right to the properties. The case was referred to a master, tried, and a final decree rendered July 16, 1895. This decree gave judgment for the complainant therein and against J. J. Carter for the amount of its said loan, with interest, together with a foreclosure upon the lands involved in this controversy, against the defendants J. J. Carter and Josephine M. Carter, and ordered a sale of the property. Although various attempts were made, no final sale of the property was made under the decree of July 16. 1895, and on October 8, 1896, the American Building & Loan Association, complainant, filed the present bill, charging the facts, among others, of the sale by James B. Simpson to J. J. Carter on October 19, 1889; the execution of the vendor's lien note for $1,500 by the said J. J. Carter to the said James B. Simpson; the execution of the deed of trust at the same time; that it was not recorded until January 6, 1892; the loan of $5,000 made by the complainant herein on October

2, 1889, to the said J. J. Carter and Josephine M. Carter, and the execution by them of their bond and deed of trust to secure the payment of the same; that at the time the complainant filed its original bill it had instituted inquiries of James B. Simpson for the purpose of discovering the then holder of the note, and found that it had been transferred to and was then held by J. W. Young, who was made a party defendant to that suit; that the $1,500 vendor's lien note was to be taken up with this loan, but that defendant J. J. Carter, for the purpose of cheating and defrauding the complainant, and depriving it of its lien, had fraudulently procured a transfer of the note from James B. Simpson to the said J. W. Young; that it had no knowledge of the existence of the deed of trust until after the sale had been made under the same by the trustee, M. L. Robertson, and then only constructive knowledge under the statutes; and that at the time of the institution of said cause complainant had no notice whatever of any transfer to Mrs. N. J. Carter, nor of any claim by her to the note. It further charges that the note was really paid by J. J. Carter, and was transferred to Mrs. N. J. Carter merely for convenience; that the sale made by M. L. Robertson, trustee, was collusive, and made for the benefit of the said J. J. Carter, and for the purpose of defrauding his creditors, and especially the complainant herein; that the said Mrs. N. J. Carter never paid any consideration whatever for said note, nor did she pay any consideration whatever to the trustee for said lands; that a final decree was rendered in the former cause, No. 200, in equity, in its favor, establishing the amount due it from said J. J. Carter on account of said loan, to wit, the sum of $3,100, with interest at the rate of 6 per cent. per annum from January 1, 1891, and 10 per cent. on the entire amount as attorney's fees, and all costs of suit, and decreeing a foreclosure of its lien against all the defendants therein, and a sale of the property to pay the judgment; but that there was never any final sale made of said properties under said decree. The complainant prays that the deed from J. J. Carter and wife to M. L. Robertson, trustee, to Mrs. N. J. Carter be canceled, set aside, and held for naught; and if it should appear that the said Mrs. N. J. Carter purchased the note executed by J. J. Carter to the said J. B. Simpson with her own means, then that an account be taken of the interest accruing upon the note, and of the rents collected by the said Mrs. N. J. Carter and the said Josephine M. Carter, as well as an account of all outlays for taxes, repairs, improvements, or other expenses incurred upon said property, and that the balance found in their hands, or in the hands of either of them, be ascertained, and the same applied to the payment of the note of $1,500 and interest, and, if any sum should remain due upon the note, then that the complainant be allowed to pay the same to such person as the court shall declare to be entitled to receive it; that the complainant be substituted to the place of the holder of said note; that the property be sold under the decree of the court already rendered; and for such order and decree as the court may see proper to render in this cause, and for all such other relief as in equity and good conscience may seem proper in the premises, etc. J. J. Carter and his wife, Josephine M. Carter, filed an answer to this bill on April 7, 1897, in which they, in substance,

deny that the complainant was without knowledge of the existence of the deed of trust to secure the payment of the $1,500 note; that its existence was concealed; that J. J. Carter was the owner of said $1,500 note; that the $1,500 was to be paid out of the loan; that J. J. Carter caused or procured the transfer to be made to Mrs. N. J. Carter for the purpose of procuring a foreclosure; and that there was collusion or attempt to defraud the creditors of J. J. Carter, or that the said Nancy J. Carter and Josephine M. Carter paid no consideration for said lands. They claim that the entire transaction was in good faith; that Mrs. Nancy J. Carter purchased the note from J. W. Young with her own separate means, and became thereby the owner of the same, and afterwards that she became the owner by purchase at trustee's sale of the property, and that Mrs. Josephine M. Carter became the owner of the property as devisee under the will of the said Mrs. Nancy J. Carter; and that the complainant had made no effort to make the real owner of said note a party for the purpose of protecting itself against the $1,500 vendor's lien note. Otherwise, the defendants admit generally the statements of the bill, and that Mrs. N. J. Carter purchased the property at the trustee's sale on the 6th day of January, 1892, and afterwards departed this life. The defendants state that the said Nancy J. Carter, on the 6th day of January, 1892, took possession of said property, and continued to occupy and possess the same openly, peaceably, and adversely up to the date of her death, which occurred on the 9th day of March, 1894; that the said Nancy J. Carter departed this life on the said 9th day of March, 1894, testate, and by the terms of her last will and testament devised and conveyed the property to Josephine M. Carter; that the will was duly filed for probate on the 20th day of August, 1894, and afterwards duly probated; and that the said Josephine M. Carter has been in possession of said property, holding the same by virtue of the will of the said Nancy J. Carter, ever since the death of the said Nancy J. Carter.

On the hearing the following decree was rendered:

"This cause came on to be heard upon the pleadings and proof in the case, and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed by the court that the sale and conveyance of the premises in controversy made by M. L. Robertson, trustee, to Nancy J. Carter, on the 5th day of January, 1892, mentioned in the bill and answer in, this cause, and the conveyance and bequest of said property by the said Nancy J. Carter to the defendant Josephine M. Carter, were made with the intent to defraud the creditors of the said J. J. Carter, and particularly the plaintiff in this cause, and are, therefore, as to the plaintiff, voidable. It is therefore ordered, adjudged, and decreed by the court that the said sale made by the said Robertson, and the bequest of said property by the said Nancy J. Carter, deceased, to the defendant Josephine M. Carter, ought to be rescinded, set aside, and for naught held; and the court doth order and decree that the said conveyances by said deed and will be declared null and void, and orders and directs that they be canceled. And it appearing to the court that the prior incumbrance existing against the property described in the bill and answer herein for the sum of $1,500, payable originally to James B. Simpson, and afterwards transferred by him to J. W. Young, was by the said J. W. Young transferred and assigned to Nancy J. Carter, deceased, and that at the time of the transfer there was unpaid of said original indebtedness the sum of $1,500, which said sum the said Nancy J. Carter paid to the said J. W. Young as a consideration for said transfer, out of her own individual prop-

erty. And it further appearing to the court that after the foreclosure of the said deed of trust on, to wit, the 5th day of January, 1892, the said Nancy J. Carter took possession of said mortgaged premises under the foreclosure of the same hereinbefore declared to be null and void, and that she remained in possession thereof, enjoying the use and benefits of the same and receiving the rents therefor during the remainder of her life; that the said Nancy J. Carter died on the ——— day of ———, 1894; that the reasonable rent of said property during the time the said Nancy J. Carter was in possession thereof was fifty dollars per month, and that the said rents were paid to her; that she devised said property by a codicil to her last will and testament to the defendant Josephine M. Carter, and that the reasonable rent of said property since the death of said Nancy J. Carter, and whilst the said Josephine M. Carter has been in the possession thereof, is fifty dollars per month: The court finds and adjudges that neither the said Nancy J. Carter, whilst she was in possession of said property, nor the said Josephine M. Carter, is liable to account for the rents so received by them, and that the debt secured by the deed of trust under which the said Nancy J. Carter purchased, and which said sale is hereby set aside, is not entitled to credit for said rents, and that neither the said Nancy J. Carter nor Josephine M. Carter are liable to account for the same at the suit of the plaintiff herein, nor will they be allowed as a credit upon the prior mortgage assigned to the said Nancy J. Carter. It is further ordered, adjudged, and decreed that the plaintiff may redeem the property hereinafter described from the mortgage transferred to the said Nancy J. Carter by the said J. W. Young, and that the amount now due upon said mortgage is twenty-six hundred and sixty-five dollars, and that upon the payment of the said sum to the defendant Josephine M. Carter by the complainant herein within forty days from this date the said Josephine M. Carter and J. J. Carter are hereby ordered and directed to assign and transfer the same without recourse upon them to the plaintiff herein. It is further ordered, adjudged, and decreed that R. M. Love, master commissioner, heretofore appointed by this court to execute the decree rendered in this cause as originally adjudged and determined on the 9th day of March, 1894, foreclosing the mortgage lien on the property described in complainant's bill, * * * be, and is hereby, directed to sell the said above-described premises in obedience to the order heretofore made as above stated, and that an order of sale issue to the said master commissioner in accordance with the decree heretofore mentioned, and that the said master commissioner be, and he is hereby, directed to execute the said judgment and decree as heretofore rendered in said cause in all respects as therein directed, and that the sale made by him, the said master commissioner, be made subject to the indebtedness secured by the deed of trust heretofore existing in favor of James B. Simpson, and herein directed to reassign and transfer to the plaintiff, and that the proceeds of the sale of the premises made under the order to be issued by the decree of this court be applied first to the payment of the costs of this litigation, and next to the satisfaction of the complainant's debt and any sum the complainant may become subrogated to under this decree, and that the balance, if any, be paid to the defendant J. J. Carter. It is further ordered and adjudged that the plaintiff do have and recover of the said defendants its costs in this behalf expended, and that it have execution therefor."

The complainant herein filed its assignments of error, and sued out this appeal.

The evidence as to the extinguishment of J. W. Young's interest in the $1,500 lien note, while decidedly uncertain in many respects, is clear to the effect that the note was paid by J. J. Carter, and not sold to any one. J. W. Young himself, in his testimony, speaks only of payments, but says that all were made to his wife and partner, Heintz; the last payment having been made to Heintz; and he (Young) knows nothing about any transfer or indorsement. He made none himself. Mrs. Young, the wife of J. W. Young, in her

testimony, speaks only of payments by J. J. Carter. Among other things, she says:

"Q. Did you finally collect all that was due you on account of said notes? and, if you did, state from whom you received the said installments, and what you did with the notes which the entire sum coming to you was paid off. A. Yes. We finally collected all that was due on said note. While the payments, up to the last payment, were made by Mr. Carter, I do not know whether they were made out of his own money or not. I was at the store of my husband when he received a check from Mr. J. J. Carter's mother for the last payment on the note, amounting to something near $1,000."

Heintz, the partner, was not examined, nor was Mrs. Nancy J. Carter's check for $900, with which the final payment was made, produced. The answers of J. J. Carter on his examination are shifty and uncertain. He speaks throughout of the payments made on the note; sometimes of his mother's taking the note up; never plainly swearing that his mother bought the note, or ever intended to buy it. There is no evidence that Mrs. Nancy J. Carter ever saw the note, or directed the foreclosure of the lien, and the quick care she took, soon after the trustee's deed to her, to secure the property to the wife of J. J. Carter, is lively evidence of the way she regarded the transaction. Considering the undisputed and well-established circumstances attending this case from the beginning, and particularly the conduct and testimony of J. J. Carter, we are forced to the conclusion that the $1,500 note was paid and taken up by J. J. Carter, and that to the extent therefor he used moneys obtained from his mother, Mrs. Nancy J. Carter. The same were obtained by him as loans or advances for the repayment of which Mrs. Nancy J. Carter looked only to him, and in no respect relied on the property or the lien securing the note; and we think that the circuit court should have so found. This conclusion renders it unnecessary to consider the propositions advanced, and very ably discussed, concerning the right to compel an account of the rents and profits of mortgaged premises from a mortgagee or lienholder in possession for the benefit of a junior mortgagee. We are clear that the equities are with the complainant below, appellant here, and that the decree below, while properly holding the trustee's sale fraudulent as against the complainant, should have gone further, and held that the $1,500 note was paid and satisfied, and the lien thereof extinguished. The decree appealed from is reversed, and the cause is remanded, with instructions to enter a decree in favor of complainants adjudging the $1,500 lien note to have been paid and satisfied, the lien thereof extinguished, and that the sale and conveyance of the premises in controversy made by M. L. Robertson, trustee, to Mrs. Nancy J. Carter on the 5th day of January, 1892, were fraudulent and void as to complainants, and that the same be canceled; and, further, decreeing that the final decree rendered in the court below in the case of the American Building & Loan Association against J. J. Carter et al. (No. 200 of the equity docket), as finally amended and rendered on July 16, 1895, as of date March 2, 1894, be executed, and to further proceed in the cause as equity may require.